UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Jonathan Shafmaster
and Carol Shafmaster</u>

    **v.**                                            Case No. 09-cv-238-PB
                                                          Opinion No. 2011 DNH 149

<u>United States of America</u>

### MEMORANDUM AND ORDER

Jonathan and Carol Shafmaster seek a refund of interest payments and a failure-to-pay penalty they incurred following an audit of their tax returns for the 1993 and 1994 tax years. They argue that they are entitled to recover interest payments because the payments were the result of unreasonable delay by the Internal Revenue Service ("IRS") in completing the audit. They claim that the failure-to-pay penalty was improper both because the IRS failed to issue a proper notice and demand for payment of the underlying taxes and because the IRS agreed that it would not seek to recover a failure-to-pay penalty from them.

The United States has filed a motion seeking either dismissal for lack of subject matter jurisdiction or summary judgment.

I. **BACKGROUND**

The Shafmasters allege that the IRS commenced an audit of their personal income tax returns for the 1993 and 1994 tax years on November 19, 1996, Compl. ¶ 6 (Doc. No. 1), and issued notices of deficiency and proposed assessments on April 17, 1998. (Doc. No. 24-5). Although approximately seventeen months passed between the start of the audit and its completion, the Shafmasters allege that the audit should have taken no more than six months. Compl. ¶ 28 (Doc. No. 1); (Doc. No. 24-3).

The Shafmasters petitioned the tax court for a redetermination of the proposed assessments, and the matter was referred to Appeals Officer Robert Hamilton of the Portsmouth, New Hampshire Appeals Office. Compl. ¶ 8 (Doc. No. 1). From 1999 until early 2001, Hamilton worked with the Shafmasters to resolve their objections to the proposed assessments. Id. ¶ 9. The parties ultimately entered into three written Stipulations of Settlement, all dated March 19, 2001, and the IRS prepared a Form 5278 reflecting the agreement. (Doc Nos. 24-15, 24-16, 24-17, 24-18). On April 25, 2001, the tax court issued two brief orders implementing the settlement agreements. (Doc. Nos. 25-5, 25-6).

Two of the three settlement agreements address the subject of penalties by stating that "[t]he respondent concedes that no

[accuracy-related penalty] is due under I.R.C. § 6662(a)." (Doc. Nos. 24-16 ¶ 17, 24-18 ¶ 28). The third agreement states that "[t]he petitioners concede the delinquency penalty under I.R.C. § 6651(a)(1) and respondent concedes the accuracy-related penalty under I.R.C. § 6662(a)." (Doc. No. 24-17 ¶ 35). The only penalty amount that is included in the Form 5278 is the failure-to-file penalty described in the third settlement agreement. (Doc. No. 24-15). Neither the settlement agreements nor the tax court decisions include any reference to failure-to-pay penalties.

Although the Shafmasters did not raise the subject of failure-to-pay penalties directly with Hamilton during the discussions that led to the settlement agreements, they claim that "Hamilton agreed that the Taxpayers would not have to pay any other penalties for 1993, 1994, and 1995, on the basis that the Taxpayers had reasonable cause to believe that no additional taxes were due." (Doc. No. 24-9 ¶ 16) (internal quotations omitted). They also assert that they would not have agreed to settle the tax court cases if the IRS had insisted on additional penalties. (Doc. No. 24-8 ¶¶ 4-6).

Shortly after the tax court issued its decisions, Hamilton informed the Shafmasters' attorney during a meeting that "the [IRS's] system would automatically impose a penalty under

Internal Revenue Code section 6651 for 'failure to pay' the tax liability previously." (Doc. No. 24-9 ¶ 21). He then stated "that he could and would waive the penalty for 'reasonable cause.'" Id. In a later meeting, Hamilton informed counsel that he had entered a code into the IRS computer system that would suppress any late payment penalty that otherwise would have been assessed. Id. at ¶ 22.

The parties disagree as to whether notice and demand was properly sent with respect to the taxes that the Shafmasters agreed to pay for the 1993 and 1994 tax years. The IRS, relying on Form 4340 certifications for both tax years, contends that notice and demand was sent on September 10, 2001. (See Doc. No. 13-2 at 5, 11; Doc No. 13-3 at 5, 14). The Shafmasters deny that they received notice and demand for either tax year at that time. (Doc. No. 24-8 ¶ 6).

On January 6, 2004, the Shafmasters submitted an "Offer to Waive Restoration on Assessments and Collection of Tax Deficiency and to Accept Overassessment" ("Form 870-AD") in which they sought specific reductions in the amounts they owed for the 1992, 1993, and 1994 tax years based on net operating carryback losses that they had incurred in later tax years. (Doc. No. 24-20). Preprinted language on the second page of Form 870-AD provides that, except in specified circumstances

that are not present here, "the case will not be reopened by the [IRS] Commissioner" if he accepts the taxpayer's offer. Id. IRS Appeals Team Manager, Kathleen Brown, signed the Shafmasters' offer and thereby accepted it for the Commissioner on January 13, 2004. (Doc. No. 25).

On August 4, 2004, the Shafmasters and the IRS entered into an installment agreement establishing a payment schedule for the Shafmasters' outstanding tax liabilities. (Doc. No. 25-1). The agreement identifies the Shafmasters' tax liability, sets a payment schedule, and states that the Shafmasters agree to "pay the federal taxes shown above, PLUS PENALTIES AND INTEREST PROVIDED BY LAW." Id. (emphasis in original).

On April 17, 2006, the IRS imposed a failure-to-pay penalty of $261,189.50 for the 1994 tax year. (Doc. No. 25-7). It based the penalty on the Shafmasters' failure to timely pay the taxes identified in the September 10, 2001 notice and demand.

The Shafmasters filed a refund claim on September 18, 2008. Compl. ¶ 22 (Doc. No. 1). The claim was denied on November 28, 2008. Id. ¶ 23. The Shafmasters filed a protest of the denial on January 22, 2009, which was also denied on April 20, 2009. Id. ¶ 27. Thereafter, they commenced this suit, wherein they seek a refund of the allegedly erroneous late payment penalty and its associated interest, as well as a refund of the excess

interest that accrued because of what they claim was unreasonable delay in completing the audit.

## II. STANDARD OF REVIEW

The standard that a district court must use in evaluating a challenge to its subject matter jurisdiction will vary depending upon the nature of the challenge.  Here, the motion to dismiss does not depend upon disputed facts.  Thus, dismissal for lack of subject matter jurisdiction will be warranted only if "the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction."  Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003).

A summary judgment motion should be granted when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact "is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In assessing whether a genuine dispute exists, the evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's

favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

### III.  ANALYSIS

The Shafmasters argue that they are entitled to a refund of both a portion of the interest they paid on their 1993 and 1994 tax liabilities and the penalty that the IRS required them to pay for failing to timely pay their taxes for the 1994 tax year. I address the government's challenge to each claim in turn.

**A.  Interest**

The Shafmasters base their claim for a refund of interest on 26 U.S.C. § 6404(e)(1), which authorizes the Secretary of the Treasury to abate interest on any deficiency that is attributable to unreasonable delay by the IRS.

In Hinck v. United States, 550 U.S. 501, 503 (2007), the Supreme Court held that a federal district court lacks jurisdiction to consider a claim for abatement under § 6404(e) because Congress has given the tax court exclusive jurisdiction over such claims.  See 26 U.S.C. 6404(h).  Although the Shafmasters attempt to distinguish Hinck by noting that they are seeking a refund rather than an abatement, the Supreme Court anticipated their argument and rejected it in dictum.  Hinck, 550 U.S. at 507-08.  The Shafmasters have failed to explain why

7

I should disregard the Supreme Court's recent guidance on the subject and I am aware of no reason why I should do so in this case.  Accordingly, I dismiss the Shafmasters' claim for a refund of interest for lack of subject matter jurisdiction.

**B.    Failure-to-Pay Penalty**

A taxpayer who fails to pay taxes due after notice and demand for payment is subject to a failure-to-pay penalty under 26 U.S.C. § 6651(a)(3).  The penalty for tax assessments over $100,000 that are not paid within ten business days after notice and demand accrues at a monthly rate of 0.5% of the taxes owed. 26 U.S.C. § 6651(a)(3).  The penalty is capped at 25%.  Id.

The Shafmasters present two principal arguments to support their claim that they are entitled to a refund of the failure-to-pay penalty.  First, they claim that the IRS failed to issue a proper notice and demand for payment.  Second, they invoke the doctrine of equitable estoppel in arguing that the IRS improperly collected the payment in any event because it promised the Shafmasters that they would not be subject to a failure-to-pay penalty.

**1.    Notice and Demand**

As I have explained, a failure-to-pay penalty may be asserted if tax liabilities are not paid within a specified time after notice and demand.  26 U.S.C. 6303(a) provides that this

requirement can be satisfied by leaving the notice and demand at the taxpayer's dwelling or his usual place of business. Alternatively, the IRS can mail the notice and demand to the taxpayer at his last known address, in which case the notice and demand is effective even if it is never actually received by the taxpayer. 26 U.S.C. 6303(a); United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984).

The IRS has relied on a Form 4340 certification in this case to establish that it satisfied the notice and demand requirement. "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992); Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992); United States v. Aivalikles, 278 F.Supp.2d 141, 143 (D.N.H. 2003).

Because the Form 4340 at issue here states that notice and demand was made, the Shafmasters must present evidence sufficient to rebut the presumption of correctness that attaches to the certification. To overcome the presumption, the Shafmasters have both the burden of production and the burden of persuasion. Long v. United States, 972 F.2d 1174, 1181 & n.9 (10th Cir. 1992); see also Hansen v. United States, 7 F.3d 137,

9

138 (9th Cir. 1993) (per curiam); Psaty v. United States, 442 F.2d 1154, 1160 (3d Cir. 1971).  Without more, a taxpayer's assertion that notice and demand were not received is insufficient to create a triable question of fact.  Hansen, 7 F.3d at 137.

The Shafmasters assert that neither they nor their attorney ever received the notice and demand.  Perhaps understanding that such denials are insufficient by themselves to create a triable issue of fact when a Form 4340 certification states that notice and demand was made, see, e.g., id., they have also produced an IRS record to buttress their claim.  That record, a September 5, 2001 "Request for Quick or Prompt Assessment," includes a handwritten notation that states:

>     SEND ALL COPIES OF BILL TO
>     APPEALS ADDRESS ABOVE
>     DO NOT BILL TAXPAYER
>     IMMINENT STATUTE

(Doc. No. 29-2).  Because this document appears to have been prepared only a few days before the IRS claims notice and demand was made, it is sufficient when considered with the other evidence in the record to permit a reasonable factfinder to question whether the IRS sent the notice and demand to the Shafmasters' last known address as the statute requires.  Accordingly, I deny the government's request for summary

judgment with respect to the Shafmasters' claim for a refund of the failure-to-pay penalty.

### 2. Equitable Estoppel

The Shafmasters alternatively rest their claim for a refund of the failure-to-pay penalty on the doctrine of equitable estoppel.

The elements of equitable estoppel are: (1) a misrepresentation by one party who had reason to believe that the other party would rely on the misrepresentation; (2) detrimental reliance by the other party; and (3) reasonableness of reliance, in that the relying party did not and should not have known that the other party's conduct was misleading. Ramirez-Carlo v. United States, 496 F.3d 41, 49 (1st Cir. 2007) (citing Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984)). An additional element must be proved when equitable estoppel is asserted against the government. Akbarin v. INS, 669 F.2d 839, 842 (1st Cir. 1982). In such cases, the party invoking the doctrine must demonstrate that it "reasonably relied on some 'affirmative misconduct' attributable to the sovereign." United States v. Ven-Fuel, Inc., 758 F.2d 741, 761 (1st Cir. 1985) (citing Akbarin, 669 F.2d at 842).

The government challenges the Shafmasters' equitable estoppel claim on several different grounds but I need only

explain why they could not have reasonably relied on the statements on which their claim is based to resolve the issue in the government's favor.

Congress has expressly limited the power of Treasury Department officials to compromise tax claims. See 26 U.S.C. §§ 7121, 7122. The Treasury Department regulations that implement these statutes establish procedures that must be complied with by taxpayers in order to bind the government to a settlement, 26 C.F.R. § 301.7122-1(d)-(e), and ample case law clearly provides that "the statutory procedure 'is the exclusive method by which tax cases should be compromised.'" Luxton v. United States, 340 F.3d 659, 663 (8th Cir. 2003) (quoting Botany Worsted Mills v. United States, 278 U.S. 282, 288-89 (1929)); Klein v. Comm'r, 899 F.2d 1149, 1152 (11th Cir. 1990); Brooks v. United States, 833 F.2d 1136, 1145-46 (4th Cir. 1987).

The Shafmasters do not claim that any of the statements they rely on meet the statutory requirements for a binding settlement. Absent unusual circumstances that are not present here, this dooms their equitable estoppel claim because, "those who deal with the government are charged with knowledge of applicable statutes and regulations." Boulez v. Comm'r, 810 F.2d 209, 218 n.68 (D.C. Cir. 1987) (dictum); see also Heckler, 467 U.S. at 64-65; Fed. Crop Ins. Corp. v. Merrill, 332 U.S.

380, 384-85 (1947). Accordingly, I agree with those courts that have declined to apply equitable estoppel to enforce purported settlements with the IRS that do not conform to statutory settlement procedures. See Meyers v. Comm'r, 79 F.3d 1150 (table), 1996 WL 116818, at *2 (7th Cir. 1996); Heffelfinger v. United States, 1994 WL 836368, at *5 (M.D.Pa. 1994); Delohery v. IRS, 843 F.Supp. 666, 669 (D. Colo. 1994); Aken v. United States, 31 Fed. Cl. 89, 97 (1994). Because the Shafmasters could not reasonably have relied on the statements on which their claim is based, their equitable estoppel claim necessarily fails.[1]

## IV. CONCLUSION

For the reasons set forth in this Memorandum and Order, the government's motion to dismiss or in the alternative for summary judgment (Doc. No. 19) is granted in part and denied in part. The Shafmasters' claim for a refund of interest paid with

---

[1] The Shafmasters attempt to repackage their equitable estoppel claim as a claim that they should not have had to pay the penalty because they had reasonable cause to delay payment. See 26 U.S.C. 6651(a)(3). This argument fails for the same reasons that they are not entitled to equitable estoppel. Moreover, to the extent that they claim reasonable cause that gives rise to the revised tax assessments, their argument is unsupported by precedent and is unpersuasive because their obligation to pay the specified taxes was fixed by the agreement between the parties that was later embodied in the tax court decisions.

respect to the 1993 and 1994 tax years is dismissed for lack of subject matter jurisdiction.  The government is entitled to summary judgment with respect to the Shafmasters' claim that the government is equitably estopped from subjecting them to a failure to file penalty.  The only issue that remains for trial is the Shafmasters' claim that they are entitled to a refund of the failure-to-pay penalty because the government failed to issue a proper notice and demand for payment.

SO ORDERED.

/s/Paul Barbadoro<br>
Paul Barbadoro<br>
United States District Judge

September 30, 2011

cc:   James E. Higgins, Esq.
      James E. Brown, Esq.
      W. Damon Dennis, Esq.