```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Jonathan Shafmaster**
**Carol Shafmaster**

   **v.**                                      Civil No. 09-cv-238-PB
                                             Opinion No. 2012 DNH 091
**United States of America**


### MEMORANDUM AND ORDER

The government seeks summary judgment with respect to the Shafmasters' claims for a refund of a failure-to-pay penalty. The sole question raised by the present motion is whether a Notice of Tax Lien that was sent to the Shafmasters satisfies the notice and demand requirement that is a prerequisite for the imposition of a failure-to-pay penalty under 26 U.S.C. § 6651(a)(3). For the reasons provided below, I determine that it does, and I therefore grant the government's motion for summary judgment.


### I.   BACKGROUND[1]

**A.   History of Dealings Between Shafmasters & IRS**

After an audit of the Shafmasters' personal income tax returns for the 1993 and 1994 tax years, the IRS issued notices

---

[1] A more developed recitation of the facts of this case can be found in my order of September 30, 2011.  Doc. No. 31.

of deficiency and proposed assessments.  The Shafmasters petitioned the tax court for a redetermination of the proposed assessments.  They were referred to an IRS appeals officer, with whom they worked from 1999 until early 2001 to resolve their objections.  On March 19, 2001, the Shafmasters entered into three written Stipulations of Settlement.  On April 25, 2001 the tax court issued two brief orders implementing the settlement agreements.  The tax court decisions and the settlement agreements were both silent on the issue of whether the Shafmasters would owe failure-to-pay penalties.

The government asserts that on September 10, 2001, it sent the Shafmasters a notice stating the amount they owed and demanding payment.  The Shafmasters assert that such document was not sent to their address.  On October 7, 2002, a document titled "Notice of Federal Tax Lien" was sent to the Shafmasters.  The contents of that document are described in some depth <u>infra</u>.

On January 6, 2004, the Shafmasters submitted a Form 870-AD, in which they sought specific reductions in the amounts owed for the 1992-1994 tax years based on net operating carryback losses they had incurred subsequent to those years.  The IRS accepted the offer shortly after it was submitted.

On August 4, 2004, the Shafmasters and the IRS entered into an installment agreement establishing a schedule for payment of

the outstanding tax liabilities.  The agreement identifies the Shafmasters' liability, sets a payment schedule, and states that the Shafmasters agree to "pay the federal taxes shown, PLUS PENALTIES AND INTEREST PROVIDED BY LAW."  Doc. No. 25-1.

On April 17, 2006, the IRS imposed a failure-to-pay penalty for the 1994 tax year.

**B.   Procedural History**

After paying off their balance in full, the Shafmasters filed a refund claim on September 18, 2008.  They argued, inter alia, that they were entitled to a refund of the failure-to-pay penalty.  The IRS filed a motion for summary judgment which I granted in part and denied in part, Doc. No. 31.

I rejected the Shafmasters' claim that certain representations by IRS agents equitably estopped the government from imposing the failure-to-pay penalty.  I agreed with the Shafmasters, however, that a triable issue of fact existed as to whether the IRS had sent notice and demand to the Shafmasters' last known address, a prerequisite to imposition of the penalty. Although the government produced a Form 4340 indicating that notice and demand had been properly sent on September 10, 2001, I determined that the presumption of correctness typically accorded to that form had been sufficiently rebutted by the Shafmasters' submissions.  In conjunction with their averments

3

that they never received the notice and demand, the Shafmasters also presented a handwritten notation on a "Request for Quick or Prompt Assessment" form, dated September 5, 2001, that reads:

> SEND ALL COPIES OF BILL TO
> APPEALS ADDRESS ABOVE
> <u>DO</u> <u>NOT</u> <u>BILL</u> <u>TAXPAYER</u>
> IMMINENT STATUTE

Doc. No. 29-2. After considering the notation's indication that the IRS should not directly bill the Shafmasters, and in light of the document's temporal proximity to the date the IRS contends notice and demand was issued, I concluded that a reasonable factfinder could question whether notice and demand had been properly sent.

Based on assertions that it could explain away the notation, I permitted the government to again move for summary judgment. After a second round of summary judgment filings, however, I was again unable to conclude on the basis of the government's submissions that notice and demand was sent to the Shafmasters on September 10, 2001. Nonetheless, among its submissions accompanying the motion, the government also produced a Notice of Tax Lien form that was sent to the Shafmasters on October 7, 2002. The document appears on its face to satisfy the notice and demand required by statute, and the Shafmasters do not contest that the form was properly sent

4

to them. I directed the government to submit a third summary judgment motion to fully articulate the argument that the Notice of Tax Lien sent to the Shafmasters permits imposition of the failure-to-pay penalty. That motion is the subject of this order.

**C.   Notice of Tax Lien Form**

The form relevant to this order is an IRS Form 668(Y)(c) that is titled "Notice of Federal Tax Lien." Notice of Tax Lien, Doc. No. 33-10 at 4. The document indicates that it was prepared on October 1, 2002, and a cover page indicates that it was sent to the Shafmasters on October 7. Id. at 2, 4. The form contains a table that lists dates and balances due for the 1993 and 1994 tax years. Id. at 4. In the same row as the most recent date of assessment for each year, the table states the unpaid balance of assessment for that year. Id. For 1994, the tax year in question, the unpaid balance was $2,156,919. Id.

A box toward the top of the document states, in bold type:

> As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

5

Id. Underneath, the Shafmasters' names and address are listed. Id. To the right, another box contains a series of bullet points in small type, one of which reads: "IRS will continue to charge penalty and interest until you satisfy the amount you owe." Id.

## II. STANDARD OF REVIEW

A summary judgment motion should be granted when the record reveals "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

Id. Underneath, the Shafmasters' names and address are listed. Id. To the right, another box contains a series of bullet points in small type, one of which reads: "IRS will continue to charge penalty and interest until you satisfy the amount you owe." Id.

## II. STANDARD OF REVIEW

A summary judgment motion should be granted when the record reveals "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III. ANALYSIS

The Shafmasters argue that the Notice of Tax Lien sent to them by the IRS cannot constitute the notice and demand necessary to impose a failure-to-pay penalty. They assert that its status as notice and demand is invalidated by three deficiencies: (1) its inaccuracy in stating the Shafmasters' liability; (2) its failure to demand payment; and (3) its issuance beyond 60 days after taxes were assessed. Additionally, the Shafmasters contend that even if the Notice of Tax Lien does qualify as notice and demand, the failure-to-pay penalty was improperly imposed because the maximum penalty was assessed prior to the date it would have fully matured.

### A. Legal Background

A taxpayer who fails to pay taxes due after notice and demand for payment is subject to a failure-to-pay penalty under 26 U.S.C. § 6651(a)(3). When tax assessments of over $100,000 are not paid within 10 business days after notice and demand, the penalty accrues at a monthly rate of 0.5% of the taxes owed. Id. The failure-to-pay penalty is capped at 25%. Id.

The notice and demand requirement can be satisfied by leaving the notice and demand at the taxpayer's dwelling or usual place of business. 26 U.S.C. § 6303(a). Alternatively,

the IRS can mail the notice and demand to the taxpayer's last known address, in which case it is effective even if never actually received by the taxpayer.  Id.; United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984).  The form on which notice and demand is made is irrelevant as long as it "gives notice to each person liable for the unpaid tax, stat[es] the amount and demand[s] payment thereof."  26 U.S.C. § 6303(a); see United States v. Roccio, 981 F.2d 587, 591 (1st Cir. 1992) (noting that 26 U.S.C. § 6303(a) "does not mandate the use of any specific form of notice"); Elias v. Connett, 908 F.2d 521, 525 (9th Cir. 1990) (explaining that form of notice and demand "is irrelevant as long as it provides the taxpayer with all the information required under 26 U.S.C. § 6303(a)").  And although the government must issue notice and demand within 60 days of the assessment, 26 U.S.C. § 6303(a), "the failure to give notice within 60 days does not invalidate the notice."  26 C.F.R. § 301.6303-1(a).

### B.  Validity of Notice and Demand

#### 1.  Inaccuracy

The Shafmasters argue that the Notice of Tax Lien cannot constitute notice and demand because the amount listed on the document as their liability for the 1994 tax year is inaccurate. Although presented as one argument, the Shafmasters actually

8

make two distinct claims.  First, they assert that the amount listed is inaccurate as the result of IRS error.  Second, they argue that both parties understood that the amount listed was only a preliminary figure that was not representative of what the Shafmasters would actually owe for the 1994 tax year.  I address each argument in turn.

The first claim is based on inconsistencies between the liability listed for the 1994 tax year on the Notice of Tax Lien and the liabilities listed for that year on other forms.  The Notice of Tax Lien, dated October 1, 2002, states that the Shafmasters had an unpaid balance for the 1994 tax year of $2,156,919.  Notice of Tax Lien, Doc. No. 33-10 at 4.  The account transcript for the 1994 tax year states that a liability of $2,069,035.23 was imposed on September 10, 2001.[2]  Account Transcript, Doc. No. 33-3 at 3.  And a Form 3552, also dated September 10, 2001, puts the Shafmasters' overall liability for the 1994 tax year at $2,070,497.23.[3]  Form 3552, Doc. No. 33-5.

---

[2] This amount is the sum of three parts: (1) the additional tax assessment of $1,167,380; (2) a late-filing penalty of $49,545; and (3) interest that had accrued totaling $852,110.23.  Account Transcript, Doc. No. 33-3 at 3.  The former two numbers are the same amounts listed on the tax court's order. See Tax Ct. Decision for 1994 Tax Year at 1, Doc. No. 25-6.  The tax court did not address the interest that would be due.  Id.

[3] As with the account transcript, see supra note 2, the Form 3552 breaks the total liability into three component parts.  Form

9

The Shafmasters argue that because these documents are inconsistent, the Notice of Tax Lien must be inaccurate and therefore cannot constitute an effective notice and demand.

It is apparent from the liability breakdown on the two 2001 forms that the discrepancy in the total between those documents is due to a difference of $1,462 in the amount of the late-filing penalty. I am unable to ascertain why these two documents would contain slightly divergent penalty amounts. I therefore assume, without deciding, that the Shafmasters have satisfied their burden of showing an IRS error in regard to the $1,462 divergence in amounts between the 2001 documents. See United States v. Schroeder, 900 F.2d 1144, 1148 (7th Cir. 1990) (noting that Commissioner's tax deficiency determinations are presumed correct and taxpayer has burden of production and persuasion to show otherwise).

It is not surprising, however, that the Notice of Tax Lien, prepared more than a year later, states an amount that is substantially higher than the amounts stated on the 2001 documents. Interest would have continued to accrue between September 2001 and October 2002, and the additional balance of a little over $85,000 appears in line with what the interest would

---

3552, Doc. No. 33-5. The additional tax and the interest on the Form 3552 are the same as on the account transcript, but the penalty amount is slightly higher.

10

have been on approximately 13 months of additional nonpayment on the Shafmasters' outstanding liability.[4]  By simply drawing attention to an increase in liability in a situation where an increase would be expected, the Shafmasters have not satisfied their burden of showing IRS error.  See id.  Therefore, the Shafmasters have failed to show any mistake in calculation subsequent to September 10, 2001.

I proceed on the assumption that the Shafmasters have shown only that the $1,462 divergence in amounts between the 2001 documents may be inaccurate.  Even assuming that this error was unresolved by the time the IRS issued the 2002 Notice of Tax Lien,[5] however, an error of such a small magnitude would not affect the document's ability to serve as notice and demand.  See Sage v. United States, 908 F.2d 18, 22 (5th Cir. 1990) ("Clearly a notice of assessment and demand for payment that contains a technical error will be held valid where the taxpayer

---

[4] As a point of comparison, I note that the account transcript lists the interest charged as of February 23, 2004 at $173,659.60.  Account Transcript, Doc. No. 33-3 at 4.  I take this figure to represent the entire interest accruing between September 10, 2001 and February 23, 2004, inclusive of the approximately $85,000 that had accrued as of October 2002.

[5] Although I assume its truth, I am skeptical about the existence of any persistent IRS error.  The Shafmasters have had a full opportunity to litigate their 1994 tax liability and its associated penalties, and have never claimed that an IRS calculation error is a distinct basis for a refund of some amount they have paid.

has not been misled by the error."); Planned Inv., Inc. v. United States, 881 F.2d 340, 344 (6th Cir. 1989) (same); see also Schroeder, 900 F.2d at 1148 (holding that taxpayers owed the government the amount of their actual liability notwithstanding the IRS notifying taxpayers that their liability was $6,000 in excess of the approximately $125,000 they owed). The Shafmasters have failed to produce any evidence that would tend to show that the liability amount listed on the Notice of Federal Tax Lien contained an error of material dimension.

   The Shafmasters' second argument is based on their mutual understanding with the IRS that future calculations would reduce their actual liability for the 1994 tax year.  The IRS did not finish calculating net operating loss carrybacks from the 1995-1998 tax years until late 2003, and interest netting calculations were not completed until the summer of 2004.  Supp. Burke Aff. ¶ 5-6, Doc. No. 38-1.  These calculations both significantly altered the Shafmasters 1994 tax year liability. At heart, the Shafmasters' argument is that the 2002 Notice of Tax Lien could not have stated the amount they owed, and therefore could not demand payment of that amount, because both the IRS and the Shafmasters were awaiting additional calculations that would reduce the liability for the 1994 tax year.

I find their argument unpersuasive. Framed differently, the Shafmasters urge that they were entitled to further delay payment for a tax assessment that was already nearly a decade overdue because the final calculation of their taxes for intervening years might eventually reduce the amount owed for that year. The Shafmasters have not cited to any statute or case law that supports that position, and my research has revealed a number of cases that strongly weigh against their contention. See, e.g., Simon v. Comm'r, 248 F.2d 869, 877 (8th Cir. 1957) ("The carryback provision does not relieve the taxpayer of the obligation to pay the tax in full when it falls due, and cannot be interpreted as deferring taxpayer's duty to pay the tax promptly."); Olsen v. Comm'r, T.C. Memo. 1993-432 (1993) (holding that because "carrybacks reflect future events that are unforeseeable at the time when tax liability is initially determined, they may not be used to reduce the net amount due" and cannot be used as a shield from a failure-to-file penalty); Swafford v. Comm'r, T.C. Memo. 1973-122 (1973) ("[T]he fact that there may be loss carrybacks which may eliminate any tax for a particular year does not wipe out the existence of a deficiency for the purpose of computing any additions to tax.").

In sum, I conclude that the Notice of Tax Lien fulfilled the requirement of 26 U.S.C. § 6303(a) that a notice and demand "stat[e] the amount" of a taxpayer's liability. I reject the Shafmasters' arguments that putative inaccuracies in the Notice of Tax Lien invalidate it as notice and demand.

### 2. Lack of Demand

The Shafmasters assert that the Notice of Tax Lien cannot constitute notice and demand because it does not explicitly demand payment. I disagree. A number of statements on the document clearly direct the recipients to immediately pay their outstanding balance. Notably, the form states, "We have made a demand for payment of this liability, but it remains unpaid"; and "IRS will continue to charge penalty and interest until you satisfy the amount you owe." Notice of Tax Lien, Doc. No. 33-10 at 4. I reject the argument that the form does not demand payment.

### 3. Lateness of Notice

The Shafmasters note that the Notice of Tax Lien was issued over a year after the date the taxes were assessed, well beyond the 60-day period within which the government is supposed to issue notice and demand. They concede, however, that notices sent more than 60 days after the assessment are still effective so long as the notice is otherwise valid. Pl.'s Mem. in Supp.

14

of Obj. to Summ. J. at 15, Doc. No. 38; see 26 C.F.R. § 301.6303-1(a). In conceding that lateness is not a distinct basis for invalidating a notice and demand, the Shafmasters essentially rely on their prior arguments, which I have already rejected.

In conclusion, I determine that the Notice of Tax Lien constitutes a valid notice and demand. The government was therefore entitled to impose a failure-to-pay penalty on the Shafmasters when they did not pay the amount due. The penalty would have begun to accrue on October 17, 2002, ten days after the Notice of Tax Lien was sent. See 26 U.S.C. § 6651(a)(3).

**C.   Penalty Date Relating Back to Notice of Tax Lien**

The final argument pressed by the Shafmasters is based on the date the failure-to-pay penalty was assessed. The full penalty was assessed on April 17, 2006, but if notice and demand was sent in October 2002 (when the Notice of Tax Lien was sent), the full penalty would not have accrued until December 2006 (50 months from the date of notice and demand). Therefore, the Shafmasters contend, "the penalty does not properly relate to the notice of lien" and "there is a genuine issue of material fact as to whether the penalty was properly assessed." Pl.'s Mem. Obj. to Summ. J. at 16, Doc. No. 38. I disagree.

15

Clearly, the IRS based its imposition of the failure-to-pay penalty on having sent notice and demand in September 2001, more than a year prior to the time it sent the Notice of Tax Lien. In my first order, I determined that the IRS had failed to prove that it had properly sent such prior notice.  The Shafmasters' claim is nonetheless without merit, however, because the Shafmasters did not satisfy their liabilities for the 1994 tax year within fifty months of October 7, 2002, the date I have determined that notice and demand was sent.  As such, although the IRS may have assessed the penalty earlier than it should have been assessed, the failure-to-pay penalty was still justified.  The Shafmasters present no argument that would suggest the IRS must issue a refund under such circumstances.

## IV.  CONCLUSION

For the reasons stated above, I grant the government's motion for summary judgment (Doc. No. 36).  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

May 7, 2012
cc:  James E. Higgins, Esq.
     James E. Brown, Esq.
     W. Damon Dennis, Esq.